Good morning, my name is Erin Radekin. I'm an attorney for the appellant Sixto Padilla-Gomez If it please the court, I'm going to ask to reserve two minutes for my rebuttal So that means after eight minutes you're taking ten and your co-counsel is taking ten? That's correct You may, go ahead. The first issue I would like to discuss is the government has filed a 28-j letter citing Florida v. Harris I don't believe that this case is relevant at all to the dog sniff discovery violation issue The court in that case held that training and testing records were sufficient to establish reliability for probable cost purposes and specifically noted that the probable cost standard is spoke about how deficiencies and evidence in some areas can make up for a lack of reliability in The training and certification records, so I don't feel that that's relevant to the discovery issue With regard to the discovery issue. I don't believe the government disputes that discovery Indicating that the truck in Garcia Valdez's driveway belonged to Mr. Padilla-Gomez Was discovered to the defense. This was not something that the defense was aware of until the first day of trial So you had a discovery regarding the truck itself But prior to the government's opening statement, you didn't realize that they had linked it to Padilla-Gomez Is that what the evidence reflects? That's correct, your honor The evidence shows that there was a black truck parked in the driveway There's no make, model, license plate information or any link to Mr. Padilla-Gomez The government argues that Mr. Padilla-Gomez should have realized it was his truck and should have informed and that Should have informed his attorney and should have informed the government Was it your voir dire on dog sniff evidence and the handler? Yes, your honor There was opportunity of voir dire However, the handler, Agent Umtegraff, testified that it was his subjective assessment That dog sniff evidence that his dog was 90% reliable and he admitted in his Testimony that he was not able to give Any kind of assessment on the percentage of false positives that Trautler... Doesn't that just go to the weight, not to the admissibility? It's sort of like I could come into court and I could say, well, I'm 90% sure that's the guy that assaulted me But I'm not a hundred percent sure that doesn't mean I can't testify to it. But then that's then but then the defense would get up and say well the Prosecutor has to prove it beyond a reasonable doubt and 90% sure isn't good enough. I disagree, your honor There's minimum standards of reliability as you know under Daubert and under federal rules of evidence 1702 and if the defense had had a time to do a motion to exclude the defense would have had the opportunity to hire an expert The jury could especially in this case the jury would have been assisted by having evidence of studies on how often dogs Do have false positives and given the deficiency in Umtegraff's testimony that would have been useful to the jury Almost the sole evidence that the government had to say that Mr. Padilla Gomez Delivered a portion of marijuana to the the by was this dog snuff evidence and the dog the government used it as if it was Substantive evidence so it was very prejudicial and we have the agent testifying that it's a 90% reliable You're saying this almost the sole evidence was the dog sniff regarding your point almost the sole evidence to say that he was a Part that brought a portion of the marijuana to the deal. The only other evidence was Communications between Garcia Valdez And the agents indicating that some of the marijuana would be brought up There wasn't any indication of who was going to bring it up Just that it was coming up down south from down south was your client there when the big bus went down. Yes Okay, so is that any evidence against him? That's evidence the government had two theories the government had a theory that he was a lookout and the government had the theory That he brought up a portion of the marijuana to the deal and those are very those are different roles Are they different charges? They are not different charges however the With regard to the lookout theory there was much weaker evidence if the evidence of the bringing a portion of the Marijuana to the deal hadn't been there and he hadn't been connected to bringing some of the marijuana up You would just have a very similar situation to the Penagos case for example where you have someone who's alleged to be a lookout But he's just there during the deal Your honor. I would like to move since I have limited time to the insufficient evidence on the gun issue Yes, okay, and so that relates to In that particular incident There was a weapon involved too, correct? There was a weapon involved but the district court made a very serious error here and the error the district court made in admitting that Evidence is holding that because my client admitted a vicarious arming enhancement in his state case that he necessarily knew the gun was there The vicarious arming enhancement under California law does not require knowledge of a weapon and there was no evidence that mr Diagamas was ever at the staging area. No evidence that he knew a firearm was available He brought supplies to the cultivation site Did the jury hear the fact that in the prior conviction? There was a gun found because this relates to the Pinkerton foreseeability with regard to your client Yes, the gun the jury did hear that there was a gun in the staging area And I argued that the prior shouldn't be admitted for that purpose that it was very prejudicial because there was no evidence that my client Knew that the gun was in the staging area in the primary primary case the first case but the district court seemed to my understanding was didn't really seem to get that Admitting the vicarious arming enhancement did not mean that he admitted that he had knowledge of a gun because there's no knowledge element Okay, so he didn't have knowledge in the prior case and he didn't and his theory was he didn't have knowledge in this case And it was admitted under Because it was a Pinkerton theory of the forest see ability so I can see why he would say it was prejudice prejudicial because It's certain but but the type of prejudicial that you're talking about Isn't exactly the same as it's bad for your client. It was clearly probative So the prejudicial that you have to be talking about is somehow that the facts in that case were, you know Highly incendiary not that they tended to show his guilt. So how was it? What was the how do you argue prejudice under the the way this the language prejudice means not bad for your client? What I mean your honor is that the probative value was so low Because there was no evidence that he was aware a firearm was present in the prior case That the prejudicial value of the likelihood that the jury would use that as pure propensity evidence He claimed he didn't know that he wasn't aware of it in there the present case, too That's correct. Doesn't that kind of make it relevant? I Mean if he keeps claiming the same thing, I'm never aware, but I'm always in cars with guns He your honor this the first case was a very different kind of case he wasn't near the staging area He delivered supplies not even down near the steering staging area in this case He is in a car in the front seat as a passenger and the gun is tucked in the side Compartment the government doesn't dispute that he wasn't aware of the gun The 38 or the Magnum I'm running out. I'm getting close to my two minutes The gun that was in don't mumble into the mic if you get asked a question just answer the question don't worry about the time I'm sorry, your honor. I'm talking about the gun in the in the present instant offense. It was in yes It said there's a 38 and then there's a 457 Magnum Magnum are you talking of which gun are you talking about? I'm sorry respectfully. I forgot which is which I'm talking about the gun in the brown Truck that my client was the passenger of there was a gun in the rear that was in a camera case Talked and tucked into a compartment in the rear. I don't think the government disputes that he didn't know that gun was there It's a pure Pinkerton theory your honor Thank you You Morning your honors. My name is Art Crowley and I represent mr. Herrera or Sonia. I want to speak to a couple of the Sentencing issues You Initially I want to point out that one of the issues is that the jury here in reaching their verdict Convicted the defendants of only growing only 1,000 plants Any plants that were taken into consideration after that Where we submit not counted there's a statement that it's based on that for the 4,000 amount is based on On an estimate by agent Salzburg and clearly an estimate is not is not good enough It then states that there are 19 other. So what would have been good enough to count every plant? That would counting every plant Apparently using at least the same system that they did in By by the two officers marquee and rice who did in fact count and get tooth and counted 2,000 of the plants They're near there at least should be some identification of what officers counted and and and and Where they counted didn't they present something to the effect of that? Okay they counted the 2,000 and then they said I don't know if there's three per a certain amount of and then they could see that you know I mean there were clearly more than the 2,000 So it wasn't exact but Doesn't have to be exact. Well, it should be closer than it is because it ends up It ends up being an enhancement in the sentencing process. In fact, that's that's the main problem I think there is in this situation and that is that The witnesses having to do with with the my next issue and main issue, which is that Well by your calculation how many marijuana plants were there more than a thousand Correct. I would I would concede that there were 2,000. All right. Well the district court sentence Your clients in the mandatory minimum. So does it? Matter. Yes, it does. Yes, it does. That's something that's been argued continually and And it does matter because there's under rule 35 It's possible to reduce a sentence after a person has been sentenced Originally when it was when it was brought in it was for a period of one year now It's extended to longer periods depending upon certain circumstances so there's no telling in this particular situation whether that's something that might arise and so therefore the specifics and Closeness and correctness of the estimates and not estimates but the counting and every other and the other consideration is extremely important because in fact if That came about if that situation came about which comes about frequently enough that they enlarge the period of time Well, okay. So has there been anything that came up in? The year after he was sentenced that would have allowed him to get relief from the mandatory minimum No, no, I'm not at this point. Okay, so why isn't it harmless here then? Well, it's also used for Purposes by the Bureau of Prisons in terms of designation and in terms of programs and I can't give you specifically when all of them are at this point, but there certainly can be some that can Relate to the seriousness and the end the degree of the crime and the degree of the particular defendants But again, if you what in the volume or he got mandatory minimum, so how would Your prison you're saying they'll look to the amount of drugs involved. Well, I'm not necessarily that particular thing, but I'm Actually also talking generally in terms of what what what should be allowed and what shouldn't be allowed under the circumstances. I if I could Move on to the to what I think is the essence of this thing that relates to I can see why it wouldn't matter if the mandatory minimum is triggered by the number of plants and it makes a difference But here given that there's no dispute. It's at least a thousand plants. He would have gotten the same sentence anyway So you're appealing that issue based on The theoretical possibility that he could somehow earn a sentence reduction Is that right? There was also Error in finding him to be a supervisor Because that was based on that He was supervising the two juveniles which originally were thought to be relatives of his cousins and that turned out to not be the case The government argues that The supervisory role Can Turn primarily on cooperator statements And also states that the district court found that the cooperator statements are what are essential in the findings in this area And the problem with that Is that that eliminates that means that the that the cooperating witnesses were responsible for providing the information To make these determinations Were not In the trial did not appear at the trial and therefore all the protections against informant testimony including the jury instruction that specifically addresses it were eliminated and What happened is the statements were brought in I would say through the back door Because they were just made outside of court either to the agent or to the u.s. Attorney and then probably passed on to the probation officer who includes them in the report and that's it's a pre-sentence report that these are that these Considerations were based on and that opens a very wide door in the slippery slippery slide because there's concern nationally about informants in trials and credibility and We now have a situation where trial court is trial courts are working on trying to correct some of that and now we have a situation where we're just eliminating that and if the Cooperating witnesses don't appear at all. They can come in the back door through the probation process at a much lesser They'll remind me in this case, how did that work pardon me remind me specifically what you're complaining about in this case I Think to it to allow it in this case Passes on to other situations and it's an overall problem that I'm addressing that I believe in this case demonstrate Good morning, your honors Michael Beck with on behalf the United States may it please the court. I was trial counsel in this case Mr. Beck with there they both the defendants make challenges to the sufficiency of the evidence in the case which that means we have to read everything and The the weakest appears to me to be regarding the Foreseeability of bringing the gun to the by bus Could you please? Because you get all inferences in favor of the verdict and it was argued on a Pinkerton theory, correct Can you tell me all the evidence on on that on that relative to each defendant? Yes, your honor to begin with on September 4th of 2008 the defendants in this case were involved in a huge narcotics deal worth of Roughly half a million dollars that involved 300 pounds of marijuana at least eight different defendants Two buyers four different vehicles the size the scope the value of this deal says something about the likelihood That firearms would be used or be a part of this deal We also had testimony from detective Stevenson saying that that as the deal increased in size or in value Foreseeability also this was as an expert the agent was allowed to testify. Yes I do when there's more dope more likelihood of a gun Yes, your honor All right, so that's part of it with regard to Padilla Gomez specifically He also has the prior conviction that we've been talking about the 404 B evidence He was involved in another marijuana conspiracy Obviously the goal of any manufacturing conspiracy is to sell the marijuana here We have a sale of half a million dollars worth of marijuana roughly So we said that that shouldn't have come in then does that affect the sufficiency of the evidence argument against him? No, your honor. There's more what we have. There is also his presence It would affect it because we'd pull out essentially a chunk certainly It would limit it would limit our evidence that we wouldn't be able to argue that but I think even without the 404 B evidence The government has sufficient evidence to convict him on a Pinkerton theory First of all, he's at three key locations on the key day of a deal that's taken two weeks to set up He shows up at the a.m. P.m. In the morning when all the parties are meeting. He shows up at the Westbrook Residents where we believe the marijuana was transferred from his vehicle to the ultimate load vehicle And then finally, I think roughly 50 miles away. He shows up right at the right time at the right location On the scene of the by bust Right and of course to point out that is Important point there is that the parking lot that day was almost empty They parked in the north side of the parking lot three quarters I guess most of the distance away from the Safeway So they do walk all the way across the an empty parking lot to get to the Safeway that theory was discussed by the agents on During direct and all of them indicated that these people were engaged in Counter surveillance acting as lookouts Yes, I mean that's like bringing a knife to a gunfight or you know, why are you bringing a gun if you don't load it As an element of the crime it does not know okay, but it was at least on the 38 caliber as I understand It was not only unloaded it was in a camera case and it was stowed away in the truck and These defendants were never proximate to the truck. I mean relatively speaking they weren't Anywhere near the truck, isn't that correct? No, your honor both of these defendants were in that truck They came to the deal early to scout the location Once the truck parked they got out of the vehicle and walked south through the through the parking lot We had testimony from detective Davidson that indicated the 38 that was found in that vehicle was easily conceivable It had no hammer on it So it could be put into a pocket pretty careful or pretty easily our position is that the weapon came out of that vehicle went south in the parking lot with One of the defendants there and then went back to the vehicle as soon as the by bus went down We believe that it was stored as soon as the police came We believe that the defendants made an effort to store it and hide it So that's why we find it in that position both of these defendants were in the truck that had the 38 Yes, your honor. Okay, and then the Magnum that was in a white Chevy that was on the other side of the parking lot We have two kind of key locations in this parking lot One is on the east side where the deal itself is going down. You have the load vehicle You have the white Chevy that the leader was kind of He arrived in and you have the agents and their vehicle on the other side of the parking lot you have This brown Chevy where we think They're essentially their security team was based So that's What you're relying for on? in furtherance of the conspiracy It is the fact that he's at three key locations That are miles apart on the right on the right day. This deal took two weeks to put together and we have Evidence that mr. Garcia Valdez the organizer of this deal was expecting the majority of the marijuana becoming From location down south and that on the key day at the key time Mr. Padilla Gomez shows up at the am-pm station and meets with Garcia Valdez there. So we think that that Mr. Padilla Gomez brought the majority of the marijuana from I'm thinking about the guns though The guns have to be in furtherance of the conspiracy and they have to be foreseeable, right? Yes, John, of course Okay, so these folks are being Linked by circumstantial evidence. So the fact that proxy being proximate is That's how you're proving that this associated with this drug deal That's that's one piece of the evidence the product their proximity to the deal The other is the course we have the testimony of the detective Stevenson indicating that as the deal increases in size the likelihood that that guns would Find the way into the ability. Yes, sir Well, there's Ammunition was found at the Westbrook residence There was no ammunition found in the vehicles and ammunition was also found at the growth site and that ammunition matched The weapons that were found in the deal with regard to The weapon in the brown truck. I don't know if that's the 38 or the other firearm. It's a 38 Now did I understand you correctly that the government's theory in this case is that? one of the two defendants Had the gun in his pocket when he walked away from the truck Across the parking lot it is and and you're basing that based on the size of the gun the fact that it is easily Concealable not on any other Particular piece of evidence. Is that right? Yes, your honor and the fact that we're talking about a huge deal here We're talking about half a million dollar drug deal and to leave the gun I think it's a fair inference which we're allowed and which we get is that they would take the gun with them If their roles were as lookouts and they walk away from the gun and it's not easily accessible That would be trapped from the government's argument that there's foreseeability Yes, and we believe that's why we believe the gun was with them. And was that inference argued to the jury? It was Is it that you think that the defendants neglected to raise the jury instruction that it? Can still go against them even if it's not loaded Are so was your argument that it probably was loaded and that they dumped the ammo or what was no our argument Is that is it that these are tools of intimidation your honor? These weapons were ready and available if need be for the defendants to use they can be used in a number of ways They could have been flashed They could have been mentioned if the deal had if the negotiations the final last-minute negotiations Had had gone awry if someone had showed up with less money or we didn't want to pay as much money Simply mentioning that firearm without even showing it can be can support a 924 conviction So these were officers that were gonna make that made the buy or that you know that set all of this up So were they searched for weapons before they met with that? I mean do that There was nothing so formal as the defendant searching the officers for weapons that did not happen But we we believe these weapons could have been used to facilitate the crime as we talked about as as tools of intimidation either By simply flashing the weapon that can have an influence on someone By brandishing the weapon and in any of those instances if it's mentioned brandished or flashed You can't tell if it's loaded so it still can be an effective tool of intimidation. It still can further The the deal in this case and so we the only evidence of the unloaded guns being flashes your supposition that You're not gonna flash it to anybody No, no, that's right. It was left in the truck. That's correct That's that's great It was left in the truck but we believe it was not left in the truck and we believe it makes more sense the reasonable inference that we think could Be drawn by the jury is that the weapon was taken with the counter-surveillance team as it went away from the truck I remember we also have another weapon. We have the 357 in the white vehicle, which is closer to the deal itself. Either weapon can be used and either weapon Focused on the 38 because as you were saying, could you address the 2005 Conviction the admission I'm not the conviction but well the prior crime because As judge Callahan pointed out Whether it's harm expresses harmful to the defendant, whatever. It's clearly a prejudicial Piece of information to come before the jury. So what was the relevance of it, you know This goes to the defendants knowledge and to his intent one of the defense here was mere presence. And so We have the government has an odd has an issue or has to address that defense. This is the act No, the touchstone with Pinkerton is foreseeability, your honor doesn't require any knowledge just is it foreseeable And were the weapons used in furtherance of the crime or in for this was introduced only on the guns or was introduced on its participation in the conspiracy Your I believe it was introduced. I'd have to think about that I haven't looked at that issue recently, but on my belief and my recollection of the trial was that it was introduced on I think it was introduced on the guns, but it could have been interested on both Yes, your honor there were two limiting instructions during trial But it could go to both your honor because we have when it when it comes to his knowledge We have him at the Westbrook Address in the morning and and the claim is that he was at the Westbrook Residence and had no knowledge that 300 pounds of marijuana was being transferred from vehicle to vehicle. We had he had no knowledge that a large amount of marijuana was there and The prior the 2005 prior would say something about his ability to recognize the smell of marijuana recognize The trappings that sounds like more being involved in the Transaction not the guns. Yes, your honor. So I do I do think it was used for both And I just haven't looked at that issue specifically in some time I would think it had to have been used for both because The defendant is vigorously disputing his knowledge regarding the presence of the gun on that prior occasion So the safer course the government didn't need that would would have been not to ask that the gun Regarding the prior in the prior be admitted under 404 B. I Think that's correct. Your honor as we're discussing this now, it's coming. It's you know, it comes back a little bit Judge in winter to address one of the questions you asked the defense with regard to The the dog sniff evidence there were three die Well, there were two documents and a video that the defendant had a year before trial One was a surveillance report at the a.m. P.m Station which specifically identified the defendants vehicle by license plate and by the defendants name. They also had The search report which said that a particular black truck that was backed into a driveway at a particular residence was searched By a dog and then they had a video That shows the defendant the Diagones right next to the black truck on the morning of September 4th And so there was plenty they had everything they needed to make To make the motion But the real issue here the way that I think the issue should be framed is whether or not the judge erred in admitting that Evidence the abuse of discretion standard is applied to the judge's admission of that you were late You conceded some violation right we do all right, we were late in discovery under Kidano On the dock The evidence regarding the dog. Yes, some of the evidence that what we're talking about with the dog discovery the four pages There are four pages that we were late on and that was Violation is that what you're conceding? No G is an expert violation. We're talking ENF your honor Okay, and so we don't think the dogs are we don't think there's an expert issue here. We think it was a standard disclosure issue under ENF and The four pages that came over later were given to the defense in time for them to use it a day before cross-examination But in terms of linkage the defense wasn't taken by surprise because by the time the government Began jury selection or the parties began jury selection They already knew that the truck was linked to the defendant by his license plate in the police report and by the photo of him That's correct, and they had that a year ahead of time your honor Judge Fisher to address an issue that you raised With regard to the plant count There were there were a number of there were two agents that testified each of them individually counted 1,100 plants and then there were other agents that we just didn't call because we're now doubling the threshold for a thousand plants We just didn't call them. We submitted a report during sentencing that detailed Specifically how many plants were counted by each agent? So it wasn't an estimation there was an officer that made an estimation on the scene But ultimately when it went before the district judge there was a precise number Of over 4,200 plants that was detailed in an officer's report I'm not sure I raised the question, but I'm glad for the information, but could you address counsel's argument that the Even though they got the mandatory minimum There's still prejudicial effect Because of the rule 35 option and whatever may go on in the Bureau of Prisons your honor. There is no there is no The mandatory minimum is the lowest sentence the defendant could have received We don't agree with the defendant's position on that in fact a sentence below 180 months given the state of the law would have been error Well, no, I understand, but his point is that regardless as opposed to imposition at least I think I understood it Maybe I didn't was that under rule 35. There's an opportunity once the sentence is imposed to modify it or ameliorate it some way That will have beneficial effect to the defendant you can do that under rule 35 your honor if the defendant cooperates with the government There's been no offer of cooperation. There's been no proffer, and so there's no reason or basis to depart below the guidelines Judge Callahan earlier you'd asked the defense about a voir dire issue with regard to the dog The main issue is admissibility here with regard to all the dog evidence and the touchstone I Could not find one your honor. I looked the closest thing We found was Codano, and it doesn't it doesn't really address the issue It just talks about dog discovery in the context of standard Discovery not expert discovery so our position is the dog handler or the dog is not an expert didn't require expert disclosure and the only issue really is did the judge air and admitting that evidence and That turns on the reliability of the dog and so here we had an extensive voir dire That the defense engaged in touching on every aspect of the of the dogs training talking touching on its relationship with Its handler and a number of other areas And so we do believe that the district court had a sound basis To admit the evidence and then as you said earlier the rest of it Goes to the weight I think the handler admitted that sometimes dogs are wrong and so the jury had that where the dog was sniffing there wasn't any marijuana Right, that's correct, and then there was also some agent testimony that Smelling marijuana or smelling deodorizers or that are that are consistent, but some of it wasn't written in a report It just came up at the time of the hearing I believe the I believe the the comment about deodorizers in the front was in the report But the issue that but detective Stevenson indicated that he smelled marijuana At trial at the back of the truck and so even if this dog issue Were of interest to the court we would argue that it's non prejudicial because you have a more specific set of testimony Coming from detective Stevenson the dog only smells narcotics in general heroin cocaine methamphetamine The agent said I specifically smelled marijuana and so the admission of that evidence even if it was an error Would not be prejudicial because you haven't I believe the standard cross-examination was engaged in and so he was crossed on that Okay Your honor unless you have further questions, I'll yield the remainder of my time. I think we're fine. Thank you. Thank you I would note to that. Mr. Pirelli indicated that I come up to the mic. We can't hear you. I'm sorry Mr. Pirelli indicated that I could have the remainder of his go ahead a Couple things I wanted to add to make clear with regard to the discovery that we originally got before trial There were two locations in discovery one talked about the black truck at the a.m. P.m. That morning and that there was license plate and make and model information there There's another place in discovery where it says there's a dark truck in the driveway that the dog alerted to The video the government's talking about is this dark video where the defendants out in the street? So the government's contention is that the defense? should have been aware that that truck or defendant should have alerted counsel and That would alleviate the government from their discovery obligation So I just want to make clear that before trial there wasn't the connection made between mr. Padilla Gomez and the truck What you didn't make the connection is what you're saying, right? I didn't make the connection. My client didn't tell me the connection I didn't know that truck was his And I think it's important that but you have the license plate. The report did identify the license plate of a different truck at A different location. There was nothing to tell me that the truck at the a.m. P.m. Was the truck in the driveway We don't I didn't even have the make of the truck There was no way for me to know that was a truck unless my client decided to tell me and then I decided to tell The government attorney client privileged information. Hey, I need dog sniff evidence expert dog sniff evidence. I did ask for expert opinion evidence And I think it's clear that a handler's testimony is expert evidence and there are I cited if it's clear Do you have any case on the point? I do and I cited them in my reply brief your honor on a dog sniff Yes Yes, I cited cases where the district court held that it was expert handler testimony testimony about a handler Interpreting a dog sniff is expert opinion Testimony there in my brief your honor Okay, I guess that's a little bit of a different question that if It is there any do you have any cases where it mentions that you have to have a job or hearing on this? No, I'm sorry. Not a job or hearing just that it's expert opinion testimony your honor And the other thing that I wanted to mention is with regard to count three there as your questions make clear There was no evidence whatsoever that the gun was on. Mr Gomez's person when he got out of the truck at all the cop came up right as they were getting in the truck I don't see how they would possibly have time to stow the truck the gun back in the back seat There was zero evidence on that. I don't think that's a fair inference from the evidence Well, I guess I think maybe the argument would be if you don't think it's a reasonable inference There's no direct evidence that no one saw him with the gun on his person, correct? but I mean circumstantial and direct evidence are both evidence and You could but you know, so I guess the question is that a fair inference. Hey And you say it's not as I guess Yes I don't think it's a fair inference when they're observed getting out of the truck and they walk up to the Safeway and right before They get back in the truck before they even get in the truck to officer arrest them I don't see how they'd have time to get the gun And I with regard to the count three I don't see a relevant difference between the Rios case and the man case here So did you argue those things in your closing art? Did you do the closing argument? I did and I argued those things I the jury went for the prosecution side and not for yours, right? Yes With regard to the gun I think and The district court said this was a close case on the rule 29 and I think your questions make it clear I don't see a relevant difference between the man case in the Rios case in this case in this case The gun is not accessible to my client. There's the government virtually concedes. There's no evidence that he knew it was there It's in a camera case in a pocket in the backseat tucked in the side No evidence that he knew it was there. Really the only evidence they have is that this is a drug by and that he should Inferred from a large drug by that they had testimony from the agent that Not only is there a pretty close connection between drugs and guns, but this was a half a million dollar deal, right? So that's presuming that mr. P Diagomas knew it was a half a million dollar deal and furthermore You would think the inference would be that you would have a loaded gun and that you would have the gun on your person In order to use it as an object of intimidation But we don't have any evidence that the gun was was around to be used as an object of intimidation Or that it would be helpful at all in a robbery because there was no ammunition anywhere on scene So that I think detracts a great deal from that inference Okay, you've used up your time thank you your honor council, thank you both
judges: Fisher, Callahan, Nguyen